UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER T. H., an Individual,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | Case No.: 2:18-10680 ADS<br><br><br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

I.  **INTRODUCTION**

Plaintiff Peter T. H.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for a period of disability and disability insurance benefits ("DIB"). For

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing his application for social security benefits, Plaintiff worked for 21 years as a pressman for the Los Angeles Times until April 2010, when he was laid off during a downsizing. (Administrative Record "AR" 46, 63, 211-12). Plaintiff alleges his medical condition became severe enough to keep him from working on January 1, 2013, the alleged disability onset date. (AR 15, 185, 211). He alleged disability based on the effects of major depressive disorder, diabetes with peripheral neuropathy, bulging lumbar disc, levoscoliosis, and pain in his back, hip, leg, knee, foot, and joints. (AR 60, 64, 66, 211, 236, 242, 245, 260).

On June 3, 2015, Plaintiff's wife completed a "FUNCTION REPORT – ADULT – THIRD PARTY" provided by the Agency. (AR 220-27). The form required her to provide detailed information about her personal observations of Plaintiff's: (1) illnesses, injuries, and conditions; (2) daily activities; and (3) abilities. (Id.) She indicated that she has known Plaintiff for 35 years and spends about 15 hours a day with him. (AR 220). She stated that Plaintiff lacks energy, focus, and concentration as a result of his depression. (AR 220-24). It also affects his sleep, and he has nightmares and fears the dark. (AR 221). He sometimes needs reminders and encouragement to take his medication or go places. (AR 222, 224). He is slower with tasks, and he can't finish what he starts. (AR 222, 224-25). Since the onset of his depression, he no longer has any hobbies or interests except watching television. (AR 224-25). He also has mood swings and is paranoid. (AR 225-26). His condition has also affected his memory, self-

esteem, and his ability to concentrate, understand, follow instructions, and get along with others. (Id.). He has difficulties handling stress and changes to his routine. (AR 226). His medications cause side effects such as dizziness, severe headaches, and "blurriness." (AR 227).

Plaintiff, 61 years old at the time of the administrative hearing, testified about his prior work experience, and his physical and mental limitations. (AR 45-82, 95). Plaintiff's wife waited outside the courtroom while Plaintiff testified. (AR 81). When she was called, she provided additional testimony about Plaintiff's condition. She said that since 2013 or 2014 Plaintiff became "very depressed" and "always sad." (AR 83-84, 86). She explained how he used to fish and exercise, but he no longer has an interest in those or other activities. (AR 83). She stated that, since the onset of his conditions, he lacks hygiene, including showering less frequently, not shaving, and dressing messily. (AR 83, 86). He has lost his interest in life. (AR 84). His depression has also affected her and their marriage. (Id.). Physically, his hips and back cause him a lot of problems. (AR 85). He cannot sit very long before his back hurts. (Id.). His pain has affected his sexual ability, which furthers his depression. (Id.). Plaintiff also became suicidal. (AR 86). He used to visit her when she was in the hospital for an organ transplant, but he had difficulty sitting. (AR 67, 86-87). Plaintiff used to walk, but he doesn't do that, either. (AR 87). His diabetes causes problems in his feet, such as a "pins and needles" burning feeling. (Id.).

### III. PROCEEDINGS BELOW

#### A. Procedural History

Plaintiff filed a claim for Title II social security benefits on March 23, 2015, alleging disability beginning January 1, 2013. (AR 13, 183, 211). Plaintiff's DIB

application was denied initially on October 28, 2015 (AR 112-13), and upon reconsideration on March 30, 2016 (AR 122-25). A hearing was held before ALJ Diana J. Coburn on August 28, 2017. (AR 35-96). Plaintiff appeared and was represented by an attorney at the hearing. (AR 35, 38-44, 94-95). As mentioned, Plaintiff testified (AR 45-82), as did his wife (AR 83-88), as well as vocational expert Gregory Jones (AR 88-94).

On January 23, 2018, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act ("SSA").[3] (AR 15-29). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on November 23, 2018. (AR 1-6). Plaintiff then filed this action in District Court on December 27, 2018, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

On May 9, 2019, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 16, 17]. The parties filed a Joint Stipulation on August 13, 2019. [Dkt. No. 20]. The case is ready for decision.[4]

## B. Summary of ALJ Decision After Hearing

In the ALJ's decision of January 23, 2018 (AR 15-29), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.[5] 20 C.F.R. § 404.1520(a)(4). At **step one**, the ALJ found that Plaintiff

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 11, 12].

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant

had not been engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2013, through the date he last met the insured-status requirements of the SSA, December 31, 2015. (AR 17). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) diabetes mellitus with neuropathy; (b) lumbar spine bulging discs; (c) depression; and (d) obesity. (AR 18). At **step three**, the ALJ found that Plaintiff, through the date he was last insured "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525[,] and 404.1526)." (AR 18-20).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6] to perform medium work as defined in 20 C.F.R. § 404.1567(c)[7] except:

> he has the frequent ability to walk on uneven terrain, climb ladders, and work at heights; and he is limited to simple work-related decisions and simple, routine tasks with frequent contact with the general public.

(AR 20).

---

have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work . . . he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c); see also Manzo v. Berryhill, 2018 WL 5099264, at *4 (C.D. Cal. Oct. 17, 2018).

At **step four**, based on Plaintiff's RFC, vocational background, and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work as a press operator, color control operator, or inker. (AR 26-27).

At **step five**, the ALJ found that Plaintiff was "an individual of advanced age," he has at least a high school education, and can communicate in English. (AR 27). The ALJ further found that, "[c]onsidering the [Plaintiff]'s age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed[.]" (Id.). The ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the representative occupations of: Hand Packager (Dictionary of Occupational Titles ("DOT") 920.587-018); Laundry Labeler (DOT 361.687-018); and Industrial Cleaner (DOT 381-687-018). (AR 28). As such, the ALJ found that Plaintiff was "not disabled," as defined in the SSA, at any time from January 1, 2013, through December 31, 2015. (Id.)

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises three issues for review, whether the ALJ correctly evaluated: (1) Plaintiff's wife's testimony; (2) Plaintiff's testimony; and (3) the medical evidence. [Dkt. No. 20 (Joint Stipulation), p. 3][8]. For the reasons below, the Court agrees with Plaintiff regarding the ALJ's failure to properly consider his wife's third-party testimony, and remands on that ground.

---

[8] The Court reorders the issues as presented by the parties.

## B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

on a ground upon which [s]he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

## C. **The ALJ Failed to Properly Consider the Third-Party Testimony and Statements of Record**

Plaintiff asserts that the ALJ improperly evaluated and discounted the testimony of his wife. [Dkt. No. 20, pp. 30-35]. Defendant contends that the ALJ appropriately discounted the testimony, and even if there was error, it was harmless because it was similar to Plaintiff's properly rejected subjective complaints. [Dkt. No. 20, pp. 33-34].

### 1. Legal Standard for Evaluating Third-Party Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)); see also 20 C.F.R. § 404.1513(a)(4). Friends and family members in a position to observe symptoms and activities are competent to testify as to a claimant's condition. See Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017). Such testimony "cannot be disregarded without comment." Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)); Robbins, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting lay witness testimony, an ALJ must give specific reasons germane for discounting the testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

2. <u>The ALJ Failed to Provide Germain Reasons for Discounting the Third-Party Function Report and Testimony.</u>

Having carefully reviewed the record, the Court finds that the ALJ failed to articulate specific reasons germane for discounting the third-party function report and testimony. The ALJ provided a terse summary of Plaintiff's wife's third-party function report and her testimony (AR 20-21, 26), and then discounted it for the following reasons:

> While a layperson can offer an opinion on the severity of the claimant's symptoms in relationship to the claimant's ability to work, the opinion of a layperson is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein. Thus, I have given [Plaintiff's wife's] statements only partial weight. I considered her statements about [Plaintiff's] limitations and adopted appropriate restrictions in the [RFC] herein. However, [Plaintiff's wife's] assertions regarding [Plaintiff's] limitations are not persuasive of additional limitations in the [RFC] as they are inconsistent with [Plaintiff's] conservative treatment records, mild clinical findings, and normal activities of daily living.

(AR 26).

First, the ALJ's reasoning that Plaintiff's wife's lay opinion was "far less" persuasive than the opinions of the medical professionals, is legally deficient.[9] (AR 26). As mentioned, friends and family members who are in a position to observe a claimant's symptoms and daily activities are deemed to be competent to testify as to those symptoms and activities. <u>See</u> <u>Diedrich</u>, 874 F.3d at 640; <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919-19 (9th Cir. 1993). Third parties need not have medical training, and their

---

[9] Notably, the Commissioner does not address this reason, or respond to Plaintiff's argument regarding it. <u>See, e.g.</u>, <u>Kinley v. Astrue</u>, 2013 WL 494122, at *3 (S.D. Ind. Feb. 8, 2013) ("The Commissioner does not respond to this [aspect of claimant's] argument, and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response.").

statements do not contain diagnosis or medical findings because the very purpose of third-party testimony is to obtain the lay witness's subjective impression of claimant's abilities and limitations. Thus, the ALJ improperly discounted the statements for this reason. See Dallas v. Comm'r Soc. Sec. Admin., 2017 WL 4242028, at *5 (D. Ariz. Sept. 25, 2017) (ALJ improperly disregarded function report because third party was not a doctor trained to make observations about claimant's limitations); Augg v. Colvin, 2016 WL 1388054, at *5 (W.D. Wash. Apr. 8, 2016) ("There is no requirement that a lay witness be 'medically trained to make exacting observations.' Nor should there be given that lay witnesses are by definition not medical professionals."); Earhart v. Colvin, 2015 WL 2368597, at *4 (D. Or. May 18, 2015) (noting Commissioner's concession that third-party's lack of medical training was not a valid reason for rejecting testimony).

Second, the ALJ's conclusion that Plaintiff's wife's assertions are inconsistent with Plaintiff's treatment records, clinical findings, and activities of daily living, is also inadequate. (AR 26). The ALJ failed to identify which testimony she found not credible, and explain which treatment records, which clinical findings, or which daily activities were allegedly inconsistent with that testimony. See Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (as amended) (ALJ must identify "which testimony she found not credible, and . . . explain[] which evidence contradicted that testimony." (emphasis in original)); Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (an ALJ must "elaborate on which daily activities conflicted with which part of [the] testimony" (emphasis in original)). This catch-all, without further specificity, is insufficient for review. See Brown-Hunter, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require

the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Moreover, a lack of support from the treatment records or clinical findings is not a proper basis for disregarding lay witness observations. Diedrich, 874 F.3d at 640 (quoting Bruce, 557 F.3d at 1116 ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record.")). That lay testimony and third-party function reports may differ from medical records alone "is precisely why such evidence is valuable at a hearing." Diedrich, 874 F.3d at 640; Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) (ALJ erred by rejecting testimony of claimant's family members about claimant's symptoms because medical records did not corroborate those symptoms); Bray v. Berryhill, 2018 WL 3076919, at *9 (C.D. Cal. June 19, 2018) ("[T]o the extent the ALJ determined that the [third-party function r]eport should be discounted based on a lack of support from the medical records, this was not a germane reason to give 'little weight' to [friend's] observations.").

Finally, the ALJ failed to make requisite findings as to the application of any of Plaintiff's daily activities to the work setting. See Martinez v. Berryhill, 721 F. App'x 597, 600 (9th Cir. 2017) (ALJ improperly discounted testimony "based on [claimant's] daily activities . . . [without] support[ing] the conclusions as to the frequency of those activities or their transferability to the workplace."); Orn, 495 F.3d at 630 (ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination").

The Commissioner's assertion of harmless error does not save the ALJ's decision. The Commissioner contends that Plaintiff's wife's testimony was similar to Plaintiff's

testimony, and therefore should be rejected for the same reasons she discounted Plaintiff's testimony. [Dkt. No. 20, p. 34]. But the ALJ made no such finding. (AR 26). See Garrison, 759 F.3d at 1010 (court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely"); Orn, 495 F.3d at 630. Notably, while the ALJ stated earlier in the decision that Plaintiff's written submissions "mirror[ed] the subjective complaints from [his] testimony," the ALJ made no similar finding that Plaintiff's wife's third-party function report or testimony "mirrored" or "parroted" Plaintiff's subjective complaints. AR 21. Thus, the Court declines to find the errors in this case harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); Stephens v. Colvin, 2014 WL 6982680, at *7 (N.D. Cal. Dec. 9, 2014) (ALJ may "reject lay witness testimony only with express reference to reasons already put forth to reject similar testimony and tying the reasoning of their credibility determinations to the particular witnesses whose testimony they reject." (internal quotation marks, citation, and alteration omitted)).

Accordingly, the ALJ did not rely on specific germane reasons supported by substantial evidence to discount Plaintiff's wife's statements of record. The ALJ's decision lacks any "meaningful explanation" based on specific evidence in the record for rejecting her observations and statements of Plaintiff's condition. See, e.g., Brown-Hunter, 806 F.3d at 492. Because of the significant functional limitations reflected in the third-party function report and hearing testimony, the Court cannot confidently conclude that no reasonable ALJ, when fully crediting Plaintiff's wife, could have reached a different disability determination. Stout, 454 F.3d at 1055-56; Stephens, 2014 WL 6982680 at *7 (improper rejection of third-party testimony not harmless because, if credited, it could support a finding that claimant is disabled).

### D. The Court Declines to Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); see also Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's credibility and give appropriate consideration to physician's opinions, step-two findings, and step-five analysis); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003). The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

### E. Remand For Further Administrative Proceedings

Remand for further administrative proceedings, rather than an award of benefits, is warranted here because further administrative review could remedy the ALJ's errors. See Brown-Hunter, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). On remand, the ALJ shall properly review and evaluate the third-party evidence in conjunction with Plaintiff's testimony and reassess Plaintiff's RFC. The ALJ shall then proceed through steps four and five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V. ORDER

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order. Judgement shall be entered accordingly.

DATE: March 24, 2020

                                          /s/ Autumn D. Spaeth
                             THE HONORABLE AUTUMN D. SPAETH
                             United States Magistrate Judge